IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF AVALON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and UNITED STATES DEPARTMENT OF THE INTERIOR, FISH AND WILDLIFE SERVICE,<br><br>　　　　　　Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>16-8057 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Daniel A. Greenhouse, Esq.
CULLEN AND DYKMAN LLP
229 Nassau Street
Princeton, NJ 08542
　　Attorney for Plaintiff

Jessica Rose O'Neill, Assistant U.S. Attorney
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101
　　Attorney for Defendants

**SIMANDLE, District Judge:**

## I.　INTRODUCTION

　　Plaintiff Borough of Avalon (hereinafter "Plaintiff") brings this case against the United States Army Corps of Engineers and the United States Department of the Interior, Fish and Wildlife Service (hereinafter "Defendants") alleging

violations of § 706(2)(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., specifically alleging an arbitrary and capricious interpretation of the Coastal Barrier Resources Act, 16 U.S.C. § 3501, et seq. (hereinafter, "CBRA")[1]. Defendants move to dismiss the Complaint, arguing that Plaintiff's challenge to the application of the CBRA is moot, Plaintiff lacks standing to sue, and that Plaintiff fails to identify a final agency action subject to review by this Court. The principal issues to be decided are, for a municipality seeking injunctive and declaratory relief with respect to the Federal Defendants' interpretation of a federal funding exclusion of the CBRA concerning displacement of sand and fill for a beach replenishment project, wherein the project will go forward with funding from the State of New Jersey as to the excluded portion, whether (a) the municipality lacks standing to challenge the federal agencies' interpretation of the CBRA due to lack of harm, and (b) the controversy is moot. For the following reasons, the Court will grant Defendants' motion to dismiss.

---

[1] Plaintiff's Complaint also includes claims alleging Defendants breached obligations to Plaintiff when they did not accept the winning bids for Solicitation Number W912BU-16-B-0004)(Count II) and Defendants' actions were inconsistent with the Coastal Zone Management Act, 16 U.S.C. § 1451 et seq. [Compl. ¶¶ 79-98.]

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 28, 2002, the United States Army Corps of Engineers (hereinafter, "the Army Corps"), through the U.S. Army Engineer for the Philadelphia District, entered into an agreement with the State of New Jersey Department of Environmental Protection (hereinafter, "NJDEP"), titled the Project Cooperation Agreement Between the Department of the Army and the New Jersey Department of Environmental Protection for Construction of Townsends Inlet to Cape May Inlet, New Jersey Shore Protection Project (hereinafter, "PCA"). [Compl. ¶ 21.] The "Project" includes initial construction and periodic nourishment of shore protection features, including two beach nourishment segments at Avalon and Stone Harbor (Seven Mile Island). [Id. ¶ 23.] The Army Corps is responsible for the funding of this project, including the periodic nourishments, except for the contribution costs allocated to the Non-Federal Sponsor, the NJDEP, by the PCA. [Id. ¶¶ 26-8.] A Feasibility Study,[3] approved by the Chief of Engineers on September 28, 1998,

---

[2] The Court accepts as true for the purposes of the instant motions the following facts as alleged in the Complaint. [Docket Item 1.] The Court also considers any materials either "integral to or explicitly relied upon in the complaint" or matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).
[3] This Feasibility study is titled "The Townsends Inlet to Cape May Inlet Feasibility Study, Final Feasibility Report and Final Environmental Impact Statement" and dated March 1997.

3

indicates such periodic nourishments should occur every three years over the course of the 50-year Project. [Id. ¶ 29.][4] Initial construction for the Project was completed in 2002, and the first partial periodic nourishment was completed in 2011. [Id. ¶ 38.] On February 5, 2013, Plaintiff entered into an agreement with NJDEP titled the State Aid Agreement Between the Department of Environmental Protection and the Borough of Avalon for Construction of the Townsends Inlet to Cape May Inlet, New Jersey Shore Protection Project Second Partial Renourishment Cycle 2012 Emergency PL 84-89 Funds Project Number 6036-R2-12 (hereinafter, "State Aid Agreement"). [Id. ¶ 37.]

On June 7, 2016, the United States Army, on behalf of Defendant Army Corps, posted a Presolicitation Synopsis for the second phase of the periodic nourishment for the Project relating to Plaintiff Avalon as well as the Borough of Stone Harbor. [Compl. ¶ 43.] The actual solicitation was posted by the Army Corps on July 7, 2016, with bids opening August 17, 2016 and set to expire October 16, 2016. [Id. ¶¶ 44, 47]. The two top bidders agreed to extend this window through December 15, 2016. [Rourke Decl. ¶ 15.][5]

---

[4] The Feasibility Study additionally recommends Hereford Inlet as a proper borrow location for the Project. [Compl. ¶ 36.]
[5] This included an extension to November 15, 2016 before the final extension to December 15, 2016. Plaintiff brought suit October 31, 2016, when the bids were still set to expire on

4

This delay in bid acceptance appears to have been caused primarily by Defendant Army Corps requesting Defendant United States Department of the Interior, Fish and Wildlife Service (hereinafter, "Fish and Wildlife Service") to advise on July 28, 2016 whether the CBRA precluded use of federal funds for the project because Hereford Inlet is within the Coastal Barrier Resources System (hereinafter, "CBRS") protected under the CBRA. [Compl. ¶¶ 49-50.] The Fish and Wildlife Service advised in a letter sent August 9, 2016 that exceptions to the CBRA limitation on federal funding for projects involving CBRS units are not applicable to this phase of the Project.[6] [Ex. G of Compl.] The Army Corps requested a separate solicitor review of the applicability of the exception in an email and memorandum sent to the Fish and Wildlife Service on September 15, 2016, which the Fish and Wildlife Service denied on September 27, 2016. [Ex. H of Compl.] Plaintiff also sought review of the decision to prohibit funding by directly reaching out to the Fish and Wildlife Service on October 13, 2016, resulting in a reply from the Fish and Wildlife Service on October 14, 2016. [Compl. ¶ 55.] In its reply, the Fish and Wildlife Service

---

November 15, under the belief that the bids would not be accepted by Defendants. [Compl. at ¶¶ 47-48.]
[6] This is based on the reasoning that the nourishment would involve <u>removing</u> materials from a CBRS unit and that such exceptions apply when moving materials <u>within</u> a CBRS unit. [Ex. G of Compl.]

5

indicates that the Project is not vetoed or blocked by the CBRA but that the Fish and Wildlife Service's interpretation remained that the CBRA prohibited either the use of federal funds or the use of materials from a CBRS unit for the Project. [Id. ¶ 56; Ex. H of Compl.]

Plaintiff commenced this litigation in October 2016 when it filed a Complaint and a motion for a temporary restraining order ("TRO"). Plaintiff's Complaint includes three counts separately alleging that (1) Defendants' interpretation of the CBRA is arbitrary, capricious, and incorrect; (2) Defendants breached an obligation to Plaintiff due to Plaintiff's reliance on the PCA; and (3) Defendants not accepting a bid is inconsistent with New Jersey's state management plan and therefore in conflict with the Coastal Zone Management Act, 16 U.S.C. § 1451, et seq. [Compl. ¶¶ 63-96.]

An initial hearing was held regarding the TRO on November 7, 2016. [Docket Item 7.][7] The TRO hearing was ultimately set to take place January 12, 2017. [Docket Item 10.] Prior to that hearing taking place, the Army Corps and the NJDEP entered a Memorandum of Agreement (hereinafter, "MOA") on November 28,

---

[7] At the TRO hearing, the Court found it would be premature to entertain the application given new developments affecting the underlying beach replenishment project, that is, negotiations between the Army Corps and the NJDEP, and also that the deadline for expiration of bids was extended to December 15, 2016. See Order of Nov. 7, 2016 [Docket Item 7].

6

2016 by which the NJDEP[8] agreed to provide the funding, within fifteen days, for this phase of the Project as it relates to the CBRS unit Hereford Inlet being used to replenish Stone Harbor. [Rourke Decl., Ex. B to Def. Br.] Subsequent to this, the Army Corps awarded the contract for periodic nourishment on December 14, 2016, leading Plaintiff to withdraw its application for the preliminary injunction in a letter to the Court dated December 20, 2016. [Docket Item 13.] Plaintiff continues to seek declaratory and injunctive relief relating to Defendants' application of the CBRA. [Id.] Thereafter, in light of the bid acceptance and the NJDEP's agreement to fund the part of the project that involves borrowing sand from Hereford Inlet for Stone Harbor's beach replenishment [Rourke Decl. ¶ 16], Defendants moved to dismiss Plaintiff's Complaint under Rule 12(b)(1), Fed. R. Civ. P., for lack of jurisdiction due to lack of standing and mootness [Docket Item 15.] The Court decides this motion without oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class

---

[8] Throughout the MOA, NJDEP is referred to as the "Non-Federal Interest."

Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). Motions to dismiss for lack of standing or on mootness grounds are properly brought under Rule 12(b)(1) because these doctrines are jurisdictional matters. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

Defendants' motion presents a factual challenge to subject matter jurisdiction under Rule 12(b)(1). A factual challenge makes an argument that the facts of the case do not support the asserted jurisdiction. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d. Cir. 2014)(quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In a factual attack, the court may weigh and consider evidence outside the pleadings and the plaintiff's allegations. Constitution Party, 757 F.3d at 358. "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

## IV. DISCUSSION

### A. Mootness

Defendants first move to dismiss Plaintiff's Complaint on mootness grounds because there is no longer a live controversy now that the MOA is in force. Article III of the Constitution limits the authority granted to district courts to those cases and controversies that are actual and ongoing. Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman, 237 F.3d 186, 192-93 (3d Cir. 2001). This helps ensure that the judiciary acts to redress or prevent actual or imminent injury to persons caused by violations of the law rather than acting to independently review and revise legislative and executive action. Summers v. Earth Island Inst., 555 U.S. 488, 492-93 (2009). If the issues presented in a case are no longer "live" or the parties lack a cognizable interest in the outcome of the case, the case is moot. N.J. Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985). For an issue to be considered "live" there must still be a real and substantial controversy between the parties that could be resolved through specific relief granted by the court. Old Bridge Owners Coop. Corp. v. Twp. of Old Bridge, 246 F.3d 310, 314 (3d Cir. 2001) (quoting Int'l Bhd. of Boilermakers, etc. v. Kelly, 815 F.2d 912 (3d Cir. 1987)).

Here, Defendants argue that the Army Corps' acceptance of the bid precludes any meaningful relief being available to

Plaintiff because any alleged harm has been eradicated. [Docket Item 15.] Additionally, Plaintiff's circumstances are unchanged from prior to the alleged violation because the Project, as it relates to Avalon, is continuing as originally planned, including still utilizing federal funding. [Rourke Decl. ¶ 16.] Plaintiff's argument in response is essentially that the Defendants' ongoing interpretation of the CBRA precluding expenditure of federal funds for removal of sand and fill from Hereford Inlet for this Project will continue to harm Plaintiff by interfering with the original plans for the fifty-year Project and thus the issue is not moot. [Opp'n at 2.]

The relief sought by Plaintiff is identical on all three counts in its Complaint: a) a declaration by the Court that Defendants' decision to not use federal funds for this phase of the project is arbitrary and capricious, b) preliminary and permanent injunction precluding Defendants from interpreting the CBRA to prohibit the use of federal funds for the second phase of the periodic nourishment, c) an order directing the Defendants to accept a bid for this phase of the Project, and d) attorneys' fees. [Compl. at 25.]

The Court will analyze Plaintiff's prayer for relief as two separate demands: one for declaratory relief declaring the CBRA was misinterpreted by the Defendants, and one for injunctive relief in the form of an order requiring bid acceptance. The

injunctive issue is indeed moot as the Plaintiff's requested relief of compelling Defendants' bid acceptance is no longer pertinent, a bid having been accepted, and therefore the Court can grant no meaningful injunctive relief. Exceptions do exist to the mootness doctrine, but none apply to the injunctive issue.[9]

Exceptions to the mootness doctrine are relevant in the Court's analysis of the declaratory issue, though, as even if the injunctive relief sought by a plaintiff becomes moot the declaratory relief sought can remain a live issue. N.J. Tpk. Auth., 772 F.2d at 32. Plaintiff argues that the interpretation of the CBRA is not a moot issue because the Defendants' allegedly arbitrary and capricious interpretation of the CBRA will continue to apply to the ongoing fifty-year Project and that the relevant question the Court should ask is if the CBRA is applicable to the ongoing Project, not whether Defendants' action is capable of repetition. If the federal Defendants

---

[9] The Defendants specifically defend against a potential application of the capable of repetition yet evading review doctrine, under which a Court may hear a case despite the issues appearing to be moot if "(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal citations omitted). There is no reason to believe Defendants will again not accept a bid in the future, and even if that was to occur there should be ample time for judicial review.

arrive at a decision that aggrieves the Borough of Avalon, it will not evade review. First, the CBRA does not directly apply to either Plaintiff's beach or to its designated borrow location, Townsends Inlet, as neither are within the CBRS, and therefore application of the CBRA could only occur if the plan for Avalon's beach renourishment was again paired with a renourishment involving a CBRS unit. [See Def. Br. at 12.] While this possibly could occur again over the course of the fifty-year Project, Plaintiff makes no argument and the Court sees no reason that this matter evades future judicial review if circumstances change, and as such the capable of repetition yet evading review doctrine is inapplicable. The Court thus agrees with the federal Defendants' position that the dispute which brought this matter to court has become moot.

### B. Standing

Although the matters of declaratory and injunctive relief are moot the Court will address Defendants' alternative ground for dismissal, that Plaintiff lacks standing to seek that relief as, based on the claims raised in its Complaint, Plaintiff lacks an injury in fact. To satisfy Article III's standing requirements, a plaintiff must show it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; that this injury is fairly traceable to the challenged action of the

12

defendant; and that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); see also Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013). In contrast to proving mootness, "in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)) (internal quotation mark omitted). The burden shifts from defendant to plaintiff here; while the defendant has the burden to show his challenged behavior will not reasonably recur when proving mootness, this does not allow a plaintiff to rely on alleged injuries that would not suffice to establish standing otherwise. Already, LLC v. Nike, Inc., 133 S. Ct. 721, 729-30 (2013).

Here, while Plaintiff could have sufficiently claimed an injury in fact prior to the bid acceptance because there was a possibility that the shore protection features would not be renourished, the acceptance of a bid to perform the Project removed any concrete injury claim. The Borough of Avalon is not within the CBRS and is thus not directly impacted by Defendants'

13

interpretation of the CBRA exception, making Plaintiff's claims that this interpretation could impact future portions of the Project relating to Plaintiff too speculative to be actual or imminent harm.

Plaintiff, for the first time, argues that it will be responsible for purported significantly increased Project costs arising out of Defendants' interpretation of the CBRA[10] and that the Defendants' application of the CBRA will impact the amount of sand available to Plaintiff in its reply brief. [Opp'n Brief at 1-2.] Claims made in briefs in opposition to a motion to dismiss do not amend the plaintiff's complaint and therefore are not considered part of the complaint. Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). The Court will only consider claims in Plaintiff's Complaint, not those first raised in Plaintiff's reply to the current Motion to Dismiss, in evaluating if the Plaintiff has standing.

The injuries alleged in Plaintiff's Complaint are not concrete. Plaintiff claims it suffered injury as a result of Defendants' interpretation of the CBRA, but no harms are specified. [Compl. ¶¶ 63-78.] Plaintiff claims it is injured by Defendants' alleged breach of obligations, but the harms

---

[10] The Plaintiff identifies itself as the Non-Federal Sponsor in the PCA to make this claim, but Plaintiff was not a party to the PCA and the PCA identifies the NJDEP as the Non-Federal Sponsor. [Opp'n Brief 3.]

mentioned are general, like that Defendants' action "places the citizens of Avalon in grave and imminent danger" and the alleged reliance created was to Plaintiff's "detriment." [Id. ¶¶ 79-89.] Plaintiff's claim of a conflict between Defendants' behavior and the Coastal Zone Management Act of 1972 also indicates no harms to Plaintiff. [Id. ¶¶ 90-98.] Additionally, Plaintiff alleges potential harms if the entire Project was to not go forward, not harms based in a renourishment being delayed or not occurring.[11] There is no indication in the Complaint or otherwise that any of these potential harms arise out of Defendants' actions.[12] Overall, these harms are insufficiently concrete to satisfy the requirements of Article III standing as they are more abstract than real. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).

After Defendants' bid acceptance, Plaintiff withdrew its request for a temporary restraining order but claims it still has ongoing concerns. While an allegation of future harm can equate to an injury-in-fact if there is a substantial risk of

---

[11] Specifically, "the dune and beach provide critical protection to the Borough's public safety and infrastructure. In the absence of these protective features, the Borough is subject to severe flooding, structural damage to residences and public infrastructure, and threat to the public safety and potential loss of life." [Compl. ¶ 62.]

[12] These feared harms appear to be potential results of the entire Project not occurring. The initial phase of the Project has already been completed and there is no evidence future phases will not occur, so these injuries are both speculative and not fairly traceable to Defendants' actions, indicating these harms also cannot establish standing in the present case.

15

that harm occurring or it is certainly impending, neither is true here. Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014). Alleged injuries that rely on a chain of contingencies or mere speculation fail to meet the injury in fact requirements. Finkelman v. NFL, 810 F.3d 187, 193-4 (3d Cir. 2016) (internal quotation marks omitted); see City of Los Angeles v. Lyons, 461 U.S. 95 (1983) (holding that plaintiff lacked standing to enjoin police chokeholds because there was not a substantial risk of the same injury occurring again to plaintiff).

The Third Circuit has held that harms alleged to be "imminent" are instead conjectural when a plaintiff cannot make these claims without saying the injury will only occur "if" something else occurs first. Reilly v. Ceridian Corp., 664 F.3d 38, 43 (3d Cir. 2011); see also Clapper, 133 S. Ct. at 1150 (indicating that courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment"). In Summers v. Earth Island Inst., plaintiff environmental groups filed suit to enjoin the U.S. Forest Service from its application of certain regulation exemptions to a salvage sale, the Burnt Ridge Project. 555 U.S. at 494. The dispute over the project was settled by the parties, leading the government to move for dismissal based on lack of standing to challenge the

regulations. Id. at 491-92. The Supreme Court held that because the challenged regulations neither required nor forbade any action by the plaintiffs, standing was lacking unless plaintiffs could demonstrate that application of the regulations would actually affect them. Id. at 493-94. Further, in response to plaintiffs' claims that future applications of the statutory interpretation could cause them harm, the Supreme Court rejected replacing the requirement of "imminent" harm with a less stringent requirement of a realistic threat of reoccurrence of the challenged activity in the reasonably near future. Id. at 499-500.

Here, the interpretation of the CBRA forbids the use of federal funds to remove sand from a CBRS unit, forcing Defendants, not the Plaintiff, to act in a particular way. This indicates that, like in Summers, Plaintiff must prove the application of the CBRA interpretation will actually affect them. Plaintiff's argument, which relies on speculation about the actions of a third party, posits that "*if* the State of New Jersey did not provide a work-around", Plaintiff's costs "would have been" increased and available protections decreased. [Opp'n Brief at 3] (emphasis added). This indicates 1) Plaintiff's costs were not increased by the actions already taken by Defendants and 2) Plaintiff's costs could theoretically be increased in a future phase of the project due to this

17

application of the CBRA "*if*" the State of New Jersey, a third party, chose to not fund a future portion of the project. This is less an imminent harm and more a speculative possibility of something that *may* happen in the future, and as such, in accordance with the Supreme Court's teaching in <u>Summers</u>, this Court should wait to involve itself unless and until those hypothetical potential harms become truly imminent.

Plaintiff's injuries as presently stated are therefore not sufficiently concrete or imminent to create standing. As such, the Court will grant Defendants' motion to dismiss without prejudice, and this Court further will allow Plaintiff leave to amend its Complaint in a matter consistent with the Court's Opinion.

**C. Final Agency Action**

Defendants additionally argue that the Court should dismiss Plaintiff's complaint because Plaintiff's claims of an arbitrary and capricious interpretation are not related to a final agency action, as required under the APA, 5 U.S.C. § 704, and therefore not subject to judicial review[14]. As the Court is dismissing this matter on standing grounds, the Court need not consider if there

---

[14] "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review". 5 U.S.C. § 704. The CBRA does not create a separate statutory right to judicial review for Plaintiff.

18

is a final agency action subject to judicial review in this matter.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Borough of Avalon's request for declaratory and injunctive relief to compel the project to go forward has become moot, and further that the Borough of Avalon lacks standing to seek a declaratory judgment regarding determinations of the Army Corps of Engineers and the Department of Interior's Fish and Wildlife Service. The case will be dismissed without prejudice to Avalon's right to reopen and renew these applications in the event that circumstances change giving rise to justiciable issues. An accompanying Order will be entered.

**September 6, 2017**          **s/ Jerome B. Simandle**
Date         JEROME B. SIMANDLE
        U.S. District Judge